1

2

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

3  Nevada Service Employees Union aka
   Service Employees International Union, Local
4  1107,

5         Plaintiff

   v.
6
   Sunrise MountainView Hospital, Inc. dba
7  MountainView Hospital

8         Defendant

Case No.: 2:22-cv-00668-JAD-EJY

Consolidated Case No.: 2:22-cv-00673-JAD-BNW

**Order Granting Motion to Compel Arbitration and Staying Case**

[Consolidated Case ECF No. 2]

9        This labor dispute stems from defendant Sunrise MountainView Hospital's firing of

10  Bridgette Batiste and the resulting union grievance and settlement negotiations.  Batiste's union,

11  plaintiff Nevada Service Employees Union aka Service Employees International Union, Local

12  1107, sues to compel arbitration because Batiste's grievance was not resolved through the

13  collective-bargaining agreement's grievance-and-arbitration procedure.  The hospital sues as

14  well, contending that the parties agreed to a settlement that resolved the dispute and the union

15  breached that settlement and the collective-bargaining agreements by trying to arbitrate a

16  resolved grievance.  The union moves to compel arbitration, arguing that any dispute over

17  whether the parties resolved their dispute is a procedural question for the arbitrator.  Because the

18  subject of this dispute—Batiste's grievance—is clearly within the scope of the collective-

19  bargaining agreement's arbitration clause and the outstanding question of whether the grievance

20  was resolved is a procedural one, I find that the arbitrator must decide it and thus compel

21  arbitration.  And I stay the hospital's breach-of-contract claim pending that arbitration.

22

23

**Background**

The hospital and the union entered into a collective-bargaining agreement (CBA) in 2020.[1]  Article 10 of the CBA establishes a multi-step procedure to resolve grievances "by an employee or the union against the hospital for a breach of a specific provision of this agreement."[2]  It requires that the parties engage in a three-step process to attempt to resolve their grievance.[3]  "In the event [that] the grievance has not been resolved" through that three-step process, the union may "advance the grievance to arbitration."[4]  The CBA further states that, "if there is an issue as to whether a grievance is barred for failure of the union or grievant to comply with the procedural requirements of this Article (procedural arbitrability), the arbitrator [will] have only the authority to address that question."[5]

On September 15, 2021, the hospital discharged union member Bridgette Batiste.[6]  The union brought a grievance on her behalf, contending that "Batiste's employment was terminated without just cause or progressive discipline[] in violation of Article 9 of the CBA," and the parties engaged in the grievance procedure contemplated in Article 10.[7]   During step three, the union "requested that the hospital present [] Batiste with a [l]ast[-c]hance [a]greement" that would reinstate her employment.[8]  The hospital did so and sent it to Batiste's union

---

[1] ECF No. 2 at 12–89 in *Nevada Serv. Employees Union v. Sunrise MountainView Hosp., Inc.*, Case No. 2:22-cv-00673-JAD-BNW (the consolidated case).

[2] *Id.* at 26.

[3] *Id.* at 27–28.

[4] *Id.* at 29.

[5] *Id.* at 30.

[6] *See* ECF No. 12.  These undisputed facts are taken from the parties' complaints, briefs, and exhibits and are not intended as findings of fact.

[7] ECF No. 2 at 9 (union representative Marcos Cardenas's declaration).

[8] *Id.*

representative, who responded by asking whether the hospital would consider awarding backpay for the time Batiste was unemployed.[9]   MountainView responded that it would not.[10]   A few weeks later, the union representative sent MountainView an email stating that, "[o]nce the [last-chance] agreement is signed by your representatives and [] Batiste, I will have [a union representative] sign it."[11]   The  hospital signed the agreement the next day,[12] but Batiste and the union did not, and the union informed MountainView about a week later that it was exercising its right to arbitrate Batiste's grievance.[13]

On April 22, 2022, the hospital filed a complaint against the union claiming that it breached both the CBA and the settlement agreement when it sought to advance Batiste's grievance to arbitration.[14]   A few hours later, the union filed a separate complaint claiming that the hospital was refusing to arbitrate the grievance according to the CBA's terms.[15]   The cases have since been consolidated.[16]   The union moves to compel arbitration of the grievance.[17]   The hospital opposes, claiming that the settlement agreement resolved the grievance, thus barring arbitration under the CBA's terms, which limit arbitration to grievances that were not resolved by the three-step process.[18]   The union responds that whether the grievance was unresolved and

---

[9] ECF No. 1-2 at 2–5.

[10] *Id.*

[11] ECF No. 1-3 at 2.

[12] *Id.*

[13] ECF No. 1 at ¶ 13.

[14] *Id.*

[15] ECF No. 1 in the consolidated case.

[16] ECF No. 8.

[17] ECF No. 2 in the consolidated case.

[18] ECF No. 12.

thus subject to arbitration is a procedural question delegated to the arbitrator under both the CBA and applicable federal law.[19]

## Discussion

### I.        The Batiste grievance must be arbitrated.

The union brings its motion under § 301 of the Labor Management Relations Act, which "empowers the federal courts to fashion rules of federal common law to govern suits for violation of contracts between an employer and a labor organization under the federal labor laws."[20]  The Supreme Court has repeatedly confirmed "the federal policy of settling labor disputes by arbitration" and notes that "federal courts [] often look[] to the Federal Arbitration Act (FAA) for guidance in labor arbitration cases."[21]  "In disputes involving a [CBA] with arbitration provisions, the arbitrability inquiry begins with a presumption of arbitrability."[22] "[S]ubstantive arbitrability, i.e., 'whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance,' is a question for judicial determination unless the parties 'clearly and unmistakably provide otherwise.'"[23]  "Questions of procedural arbitrability, by contrast, are presumptively for the arbitrator."[24]  Procedural arbitrability concerns issues of

---

[19] ECF No. 2 in the consolidated case; ECF No. 14 in the lead case.

[20] *United Paperworkers Int'l. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987) (cleaned up).

[21] *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960) (cleaned up); *United Paperworkers Int'l Union, AFL-CIO*, 484 U.S. at 36; 40 n.9.

[22] *Local Joint Exec. Bd. v. Mirage Casino-Hotel, Inc.*, 911 F.3d 588, 596 (9th Cir. 2018) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

[23] *Id.* at 595–96 (citing *AT&T Techs.*, 475 U.S. at 649).

[24] *Id.* at 596 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002)).

1   timeliness, waiver, equitable estoppel, compliance with contractual prerequisites to arbitrate, and

2   other "gateway" matters.[25]

3         The union contends that Batiste's grievance is clearly arbitrable under the CBA's terms.

4   The hospital does not deny that the subject matter of the grievance is arbitrable under the CBA's

5   grievance-and-arbitration provision but instead argues that it ceased to be so when the parties

6   resolved their dispute by agreeing to sign the last-chance agreement that MountainView offered

7   to reinstate Batiste.  It relies on the CBA's language allowing the union to seek arbitration "[i]n

8   the event [that] the grievance has not been resolved."[26]  The union responds that whether the

9   grievance was resolved is an issue of procedural arbitrability that must be submitted to

10  arbitration.

11        "Once it is determined . . . that the parties are obligated to submit the subject matter of a

12  dispute to arbitration, 'procedural' questions [that] grow out of the dispute and bear on its final

13  disposition should be left to the arbitrator."[27]  No one disputes that the subject matter of the

14  grievance—whether Batiste's termination violated Article 9 of the CBA—is subject to the

15  agreement's grievance-and-arbitration provision.  Indeed, the parties engaged in the three-step

16  grievance process in their attempt to resolve the dispute.  But the hospital's contention that the

17  parties resolved their dispute and thus that the union is barred from compelling arbitration is

18  precisely the type of procedural defense that the Supreme Court held in *John Wiley & Sons, Inc.*

19

---

20  [25] *See Howsam*, 537 U.S. at 84–85 (timeliness and waiver are procedural issues that should be
    left to the arbitrator); *Local Union No. 370 of Int'l Union of Operating Eng'rs v. Morrison-*
21  *Knudsen Co., Inc.*, 786 F.3d 1356, 1358 (9th Cir. 1986) (procedural questions of preclusion,
    equitable estoppel, and timeliness should be left to arbitrator); *John Wiley & Sons, Inc. v.*
22  *Livingston*, 376 U.S. 543, 555–59 (1964) (alleged non-compliance with grievance procedure
    preceding arbitration should be resolved by arbitrator).

23  [26] ECF No. 2 at 29 in the consolidated case.

    [27] *Livingston*, 376 U.S. at 557.

1 *v. Livingston* should be left to the arbitrator.[28]  In *Livingston*, like here, the agreement provided

2 for arbitration "as the [final] stage of the grievance procedure," which would only be reached "in

3 the event that the grievance shall not have been resolved or settled" in the previous stages.[29]  The

4 party opposing arbitration contended that the initial stages of the procedure were not followed, so

5 it had "no duty to arbitrate."[30]  The Court held that the question of whether the parties fulfilled

6 the "procedural prerequisites" to arbitrate under the labor agreement was a matter for the

7 arbitrator, noting that this result was consistent with federal labor-law policy favoring

8 arbitration.[31]

9        MountainView's argument that the union hasn't met a condition of the CBA prompting

10 arbitration (i.e., showing that the grievance is unresolved) is similar to the procedural

11 prerequisite discussed in *Livingston*.  I thus find that the hospital's procedural defense is for the

12 arbitrator to decide.  And MountainView's argument that this dispute must be decided by the

13 courts because it concerns issues of "contract formation" is unavailing.  The authority that the

14 hospital cites to support this argument concerns disputes over whether the contract containing the

15 arbitration provision was legally formed.[32]  But the hospital does not contend that the CBA or its

16

---

17 [28] *Livingston*, 376 U.S. at 557.

[29] *Id.* at 556.

18 [30] *Id.*

19 [31] *Id.* at 557–59.

20 [32] *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (noting that the court "must resolve any issue that calls into question the formation or applicability *of the specific*

21 *arbitration clause* that a party seeks to have the court enforce" (emphasis added)). MountainView also cites the Sixth Circuit's opinion in *Bakers Union Factory, No. 326 v. ITT*

22 *Cont'l Baking Co., Inc.*, 749 F.2d 350, 355 (6th Cir. 1984), which held that a settlement agreement stemming from a similar grievance process was binding on an arbitrator after that

23 settlement agreement was allegedly breached.  But the issue of breach of the settlement agreement was submitted to the arbitrator without dispute in that case, so its conclusions are inapposite.

arbitration agreement was not properly formed.  It instead argues that, because the parties dispute

the formation of the ancillary settlement agreement, that dispute must be decided by the court.

This argument thus finds no support in the authority that MountainView cites and is belied by

Supreme Court and Ninth Circuit precedent concerning procedural defenses to arbitration.[33]  So I

grant the union's motion to compel arbitration and leave the question of whether the dispute was

resolved to the arbitrator.

**II.     MountainView's breach-of-contract claim is stayed.**

The union argues that the hospital's breach-of-contract claim should also be subject to

arbitration, relying on Ninth Circuit precedent finding that settlement agreements "must be

arbitrated if the dispute relates to a subject that is within the scope of the CBA's arbitration

clause."[34]  MountainView responds that, if the parties settled, the dispute falls outside of the

arbitration clause's scope because the CBA limits arbitration to unresolved disputes.[35]  I find that

these arguments are premature so I decline to reach them at this stage.  The arbitrator will get the

first opportunity to determine whether the parties "resolved" their dispute.  If he or she finds that

they did not, the claim will remain with the arbitrator under the CBA's express terms.  If the

settlement agreement is found to be a valid contract, the parties may renew their arguments

concerning whether its breach should be arbitrated or adjudicated.

**III.    The union's attorney-fees request is denied.**

The union seeks an award of attorneys' fees it incurred prosecuting this matter in court,

contending that, "[g]iven the longstanding nature of the controlling law on this subject,

---

[33] *See supra* note 25.

[34] *Inlandboatmens Union of the Pac. v. Dutra Grp.*, 279 F.3d 1075, 1080 (9th Cir. 2002).

[35] ECF No. 12 at 8–9.

[MountainView's] refusal to arbitrate borders on being frivolous[] or the product of bad faith."[36]

MountainView responds that the union "cannot identify any evidence showing that [its] opposition to arbitration is frivolous" and again points to the language in the CBA limiting arbitration to unresolved grievances to contend that its opposition is based on the good-faith believe that this dispute belongs in court.[37]  The union has not sufficiently shown that MountainView's opposition to arbitration is frivolous or was raised in bad faith.  There are genuine disputes going to the parties' conduct during settlement negotiations and the effect of those negotiations on the arbitrability of this dispute that are not clearly resolved by controlling authority.  So I deny the union's request for attorneys' fees.

### Conclusion

IT IS THEREFORE ORDERED that Nevada Service Employees Union aka Service Employees International Union, Local 1107's motion to compel arbitration **[consolidated case 2:22-cv-00673-JAD-BNW ECF No. 2] is GRANTED**.

IT IS FURTHER ORDERED that Sunrise MountainView Hospital's breach-of-contract claim is STAYED pending the conclusion of that arbitration.

_____
U.S. District Judge Jennifer A. Dorsey
December 12, 2022

---

[36] ECF No. 2 at 6 in the consolidated case.

[37] ECF No. 12 at 9–10.